```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    -against-<br><br>DONQUE TYRELL,<br><br>            Defendant. | 15-cr-95-05 (JSR)<br><br>ORDER |

JED S. RAKOFF, U.S.D.J.:

On June 6, 2018, a jury voted to convict defendant Donque Tyrell of conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("Count 1"); aiding and abetting murder in aid of racketeering ("Count 2"); conspiring to distribute controlled substances ("Count 3"); distributing controlled substances within 1,000 feet of schools or playgrounds ("Count 4"); carrying a firearm or aiding and abetting the carrying of a firearm in relation to Counts 1, 3, or 4 ("Count 5"); carrying a firearm or aiding and abetting the carrying of a firearm in relation to an attempted assault with a deadly weapon ("Count 6"); and carrying a firearm or aiding and abetting the carrying of a firearm in relation to an assault with a deadly weapon or attempted robbery ("Count 7"). See ECF No. 2224.

On September 27, 2018, the Court sentenced Mr. Tyrell. See ECF No. 2383. Shortly thereafter, Mr. Tyrell appealed the Court's judgment, arguing, among other things, that the Court erred in its sentencing calculations as to Counts 3 and 4. See ECF No. 2386. The Second Circuit agreed with Mr. Tyrell as to that issue and remanded for resentencing. See ECF No. 3155. On October 8, 2021, after the Second Circuit's

1

mandate issued, see id., the Court resentenced Mr. Tyrell on Counts 3 and 4 and issued an amended judgment, see ECF No. 3256 ("Amended Judgement").

Pursuant to the amended judgment, Mr. Tyrell is currently serving a term of twenty-five years of imprisonment on Count 1, life imprisonment on Count 2, five years of imprisonment on Count 3, ten years of imprisonment on Count 4, twenty-five years of imprisonment on Count 5, five years of imprisonment on Count 6, and twenty-five years of imprisonment on Count 7. See Amended Judgment at 3. Each of the terms of imprisonment on Counts 1, 3, and 4 is set to run concurrently to the life sentence imposed on Count 2, while each of the terms of imprisonment on Counts 5, 6, and 7 is set to run consecutively to all the other counts. See id.

Before the Court is Mr. Tyrell's first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, as well as his motion for a new trial under Federal Rule of Criminal Procedure 33. See ECF No. 3423. The Court assumes the parties' familiarity with the facts and procedural history of the case. For the reasons stated below, the Court denies both the petition and the motion for a new trial.

I.   Habeas Petition

In support of his habeas petition, Mr. Tyrell raises two primary arguments. First, Mr. Tyrell argues that the Court must resentence him under the First Step Act. Second, Mr. Tyrell argues that his trial counsel was ineffective in various respects. The Court addresses each argument in turn below.

2

Mr. Tyrell first argues that the Court must resentence him on Counts 5, 6, and 7 pursuant to the First Step Act, which eliminated the requirement that district courts stack mandatory minimum sentences for second or successive convictions under 18 U.S.C. § 924(c). Whether that amendment applies to defendants, like Mr. Tyrell, who were originally sentenced before the Act's enactment and later resentenced after the Act's enactment is an open question in the Second Circuit, as well as a question over which other circuits are split. See United States v. Barrett, 102 F.4th 60, 69 n.7 (2d Cir. 2024). Here, however, the Court need not address that issue to resolve Mr. Tyrell's First Step Act claim in light of the concurrent sentence doctrine.

Under the concurrent sentence doctrine, a court may "leave the validity of one concurrent sentence unreviewed" when the other concurrent sentence "is valid" and "carries the same or greater duration of punishment."[1] Al-'Owhali v. United States, 36 F.4th 461, 466 (2d Cir. 2022). The doctrine applies on collateral review, including to challenges to "a conviction for which the sentence runs consecutively to one or more unchallenged life sentences." See id. at 467. Here, Mr. Tyrell's convictions on Counts 5, 6, and 7 run consecutively to his convictions on all the other counts, including Count 2, for which the Court imposed a life sentence. See Amended Judgment at 3. Accordingly, even if the Court resentenced him to lesser

---

[1] Unless otherwise indicated, case quotations omit all internal alterations, brackets, citations, ellipses, quotations, and quotation marks.

3

terms of imprisonment on Counts 5, 6, and 7, he would still serve a life sentence on Count 2.

In determining whether to apply the concurrent sentence doctrine, courts consider five factors: (i) the effect of unreviewed conviction on the petitioner's eligibility for parole, (ii) the potential applicability of recidivist statutes for any future offense committed by the petitioner, (iii) the petitioner's credibility in future trials, (iv) the possibility of a pardon, and (v) the societal stigma of a conviction. See United States v. Vargas, 615 F.2d 952, 959-60 (2d Cir. 1980). Each of these factors counsels in favor of applying the concurrent sentences doctrine in this case. Mr. Tyrell is not eligible for parole. And, as discussed below, Mr. Tyrell does not raise any persuasive challenges to the validity of his conviction on Count 2 for aiding and abetting murder, which remains part of his criminal history, would presumably affect both his credibility in a future trial and the possibility that he would receive a pardon, and carries far greater social stigma than his firearm convictions on Counts 5, 6, and 7. The Court therefore rejects Mr. Tyrell's claim under the First Step Act.

Mr. Tyrell next argues that the Court should vacate his convictions on all seven counts because his trial counsel was ineffective. Specifically, Mr. Tyrell argues that his trial counsel was ineffective because he did not object to (a) the filing of two superseding indictments after a Court-imposed deadline, (b) the admission of Stephen Hamilton's testimony about certain rap videos, or (c) the district court's uncalled witness instruction.

4

To establish that his counsel was ineffective, Mr. Tyrell "must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Cardoza v. Rock, 731 F.3d 169, 178 (2d Cir. 2013) (citing Strickland v. Washington, 466 U.S. 668 (1984)). In considering Mr. Tyrell's ineffective assistance of counsel claim, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "bear[] in mind" both that "there are countless ways to provide effective assistance in any given case" and that "even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990).

The Court concludes that Mr. Tyrell has not overcome that presumption. As noted above, Mr. Tyrell argues that his counsel failed to object to the filing of the first and second superseding indictments after a Court-imposed deadline. However, the record demonstrates that the Court specifically ordered the Government to explain why it should allow the Government to proceed to trial on the first superseding indictment, which added Count 2, in light of its deadline. See ECF No. 1749, at 1. The Court then gave Mr. Tyrell the option of either proceeding to trial on the original indictment as scheduled and potentially facing a second trial on additional charges or adjourning the trial date and having a single trial on all the charges outlined in the original and the first superseding indictments. See ECF No. 3420, at 25:7-36:6. Under those circumstances, where Mr. Tyrell chose the second option, see ECF No. 2179, at 5:7-13, it is not clear what

5

purpose an additional objection from Mr. Tyrell's counsel would have served. The record further demonstrates that counsel did, in fact, object to the filing of the second superseding indictment, which added Counts 6 and 7, after which the Court heard argument and ruled that the including Counts 6 and 7 would not prejudice Mr. Tyrell. See ECF No. 2256, Trial Transcript, at 2:21-14:7, 17:15-22:18. The Court therefore concludes that Mr. Tyrell has not demonstrated that the performance of his trial counsel was in any way deficient -- much less constitutionally deficient -- with respect to either superseding indictment.

Similarly, the record demonstrates that Mr. Tyrell's trial counsel in fact objected to various parts of Stephen Hamilton's testimony. Indeed, when Mr. Hamilton testified that the firearms in the rap video were "real," Mr. Tyrell's counsel objected that he lacked personal knowledge. Trial Transcript at 95:1-7. Trial counsel later objected on the same grounds when Mr. Hamilton testified as to how gang members would have understood the rap lyrics. See id. at 113:6-114:23. To the extent that Mr. Tyrell now argues that his trial counsel should have objected to various other portions of Mr. Hamilton's testimony -- such as his testimony that the song was about the victim's murder -- on the same grounds, such an objection would have been meritless, as the record indicates that Mr. Hamilton's testimony was based either on his own personal knowledge and was therefore admissible under Federal Rule of Evidence 701 or on what he had learned from his co-conspirators and was therefore admissible under Rule 801(d)(2)(E).

6

See id. at 197:2-199:10. Under these circumstances, the performance of Mr. Tyrell's trial attorney was not constitutionally deficient.[2]

Mr. Tyrell next argues that his trial counsel was ineffective because he failed to object to the Court's uncalled witness instruction, which, he argues, impermissibly shifted the burden of proof to the defense. That instruction read as follows:

> Ladies and gentlemen, let me pause there and add, because there was some reference of this issue on summation, you should be aware that both the government and the defendant have the same power to subpoena witnesses to testify on their behalf. If a potential witness could have been called by the government or by defendant, and neither calls the witness, then you may, if you wish, draw the conclusion that the testimony of the absent witness might have been unfavorable to the government or to the defendant or to both. On the other hand, it is equally within your province to draw no inference at all on the failure of either side to call a witness.

Trial Transcript at 1144:11-21. The decision of trial counsel not to object to that instruction was perfectly reasonable. After all, the Second Circuit has repeatedly recognized that "[w]hen a particular witness is equally available to both sides but neither party calls the witness," the court may instruct the jury that "no unfavorable inference may be drawn against either side" or that "an adverse inference may be drawn against either or both sides." United States v. Johnson, 117 F.4th 28, 49 (2d Cir. 2024). Moreover, given that the

---

[2] Mr. Tyrell also argues that the Court erred in admitting the rap videos. However, the Court ruled on the admissibility of those videos at trial and Mr. Tyrell did not appeal these rulings despite having ample opportunity to do so. Accordingly, they cannot be subject to collateral attack. See United States v. Vilar, 645 F.3d 543, 548 (2d Cir. 2011) ("A collateral attack is not a substitute for direct appeal and petitioners are therefore generally required to exhaust direct appeal before bringing a [section 2255] petition.").

Court repeatedly instructed the jury that the Government bore the burden of proof, even if counsel's performance was deficient with respect to the uncalled witness charge, Mr. Tyrell has not demonstrated that the charge prejudiced his defense. See, e.g., Trial Transcript at 1146:20-1148:13.

Finally, separate and apart from his ineffective assistance of counsel claim, Mr. Tyrell argues that the Court's decision to admit certain Facebook posts and messages violated his Fifth Amendment right to a fair trial. However, the Second Circuit has already expressly considered and rejected that argument. See ECF No. 3155, at 5. Because the mandate rule "bars re-litigation of issues already decided on direct appeal," the Court cannot likewise consider it. Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). Having thus rejected each of the bases underlying Mr. Tyrell's section 2255 petition, the Court must deny it.

II. Rule 33 Motion

Mr. Tyrell also requests a new trial under Rule 33, arguing that newly discovered evidence in the form of statements obtained from a several witnesses would likely result in his acquittal. Rule 33 permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). However, where, as here, a new trial motion is "grounded on newly discovered evidence," it "must be filed within 3 years after the verdict or finding of guilty." Id. at 33(b)(1); see also Fed. R. Crim. P. 33, Advisory Committee Notes, 1998 Amendments ("It is the intent of the Committee

8

to remove the elements of inconsistency by using the trial court's verdict or finding of guilty as the triggering event."). Mr. Tyrell filed his new trial motion on October 26, 2022, over four years after the jury returned its verdict on June 6, 2018. Accordingly, the Court must deny the motion as untimely.

***

The Court has considered any and all remaining arguments in Mr. Tyrell's submission and concludes that they are without merit. For the foregoing reasons, the Court denies both Mr. Tyrell's petition under section 2255 and his motion for a new trial under Rule 33.

SO ORDERED.

New York, NY
4/7, 2025

_____
JED S. RAKOFF, U.S.D.J.